**Application of Walter L. ROBERTS and Paul F. Burch.**

**Patent Appeal No. 8843.**

United States Court of Customs and Patent Appeals.

Jan. 18, 1973.

Francis A. Paintin, Wilmington, Del., attorney of record, for appellant; Gerald A. Hapka, Washington, D. C., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents; Fred W. Sherling, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, ALMOND, BALDWIN, and LANE, Judges.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, affirming the rejection of claims 1–7 and 9 of appellants' application.[1] No claims were allowed.

The invention relates to corrugated plastic film made from polyethylene terephthalate (hereinafter PET) having a surface coefficient of friction less than

5. Naturally such proceedings should include correction of any arithmetical errors which may have occurred in its previous calculations.

1. Serial No. 495,718 filed October 13, 1965.

about 0.40 according to the Bell test.[2] Appellants have claimed the film itself (claims 1–4) and the method of making it (claims 5–7 and 9). Claims 1 and 5 are representative:

> 1. Corrugated polyethylene terephthalate film having a surface coefficient of friction of less than about 0.40 as determined by the Bell test.

> 5. The method of corrugating polyethylene terephthalate film which comprises shaping said film at a temperature in the range of about 100° to 175°C. by pressing said film between two coacting rotating surfaces and reducing the coefficient of friction of the resulting film to below about 0.40 as determined by the Bell test.

Claims 2–4, 6, 7 and 9 are dependent claims and require no discussion for the disposition of this case.

According to appellants' specification, the surface coefficient of friction can be reduced (1) by including a filler in the film in order to increase surface roughness of the film, (2) by mechanically treating the surface of the film as by sandblasting, and (3) by applying a lubricant to the film surface. Without such treatment, ordinary corrugated film of PET forms large and bulky rolls of uneven diameter when wound because the corrugations (longitudinal grooves in the film) do not nest evenly. Also, the roll laterally telescopes and individual layers are laterally displaced from the roll thereby exposing edges which are subject to tearing and breakage. On the other hand, PET film having a surface coefficient of less than about 0.40 forms smaller rolls of even diameter as the corrugations nest evenly and there is no lateral telescoping of the roll or lateral displacement of individual layers. It is said that this reduces the storage space required and leaves no edges exposed to tearing or breakage. Neither the examiner nor the board has challenged these alleged advantages.

All the claims were rejected by the examiner under 35 U.S.C. §§ 103 and 112. As to claims 1–4, the board reversed the rejection under § 112. The board also reversed the rejection under § 103 as made against claims 5–7 and 9.

The references relied upon by the board are:

| | | |
|---|---|---|
| Roberts | 3,244,799 | April 5, 1966 |
| Australian Patent | 161,646 | March 3, 1955 |

Roberts discloses a longitudinally corrugated PET film of the type employed by appellants in their invention. However, Roberts is silent on the problems caused when large rolls are made and does not describe any method for reducing the coefficient of friction of the film.

The Australian patent describes a noncorrugated PET film but incidentally discloses that a filler can be employed in the film. In pertinent part, it reads as follows:

> The polyester film dielectric compositions of this invention need not necessarily consist solely of the polymer. * * * Fillers may be added. The fillers may be organic such as wood flour, paper, fibrous materials, etc., or inorganic, such as mica, asbestos, glass, etc.

As indicated above, use of a filler is one method disclosed by appellants for reducing the surface coefficient of friction of the film. However, the Australian patent discloses neither a purpose for employing a filler nor any specific amount.

The examiner rejected the claims directed to the film (claims 1–4) under 35 U.S.C. § 103 for the reason that "providing a filler as taught by the Australian patent is deemed obvious to the ordinary worker in the art and would not involve patentable ingenuity."

The board affirmed the examiner and said, regarding reducing the surface coefficient of friction by adding a filler, that "such result is inherent in the ob-

---

2. A test developed by the Bell Telephone Co. and described in ASME Paper No. 62–WA–321, November 1962.

vious combination of these references." The solicitor argues in his brief that "it would be obvious to the person of ordinary skill in the art that the corrugated PET film disclosed by Roberts would have a lower coefficient of friction in the film as taught by the Australian patent."

It seems clear from the stated bases for the rejection that the examiner and the board have viewed the claimed invention as necessarily reading upon a combination of the PET film of Roberts with one of the fillers disclosed in the Australian patent which combination would inherently produce a film having a lowered coefficient of friction. We do not think this is an accurate conclusion to draw from the prior art.

The claims in question call for a film having a coefficient of friction of less than about 0.40. Furthermore, appellants' specification indicates that no treatment should be employed to reduce the coefficient of friction which would also substantially affect the dielectric properties of the film. These requirements imply a minimum and, possibly, a maximum amount of filler when that method is employed. However, the Australian patent is silent as to the amount of filler and its effect on dielectric properties. It is clear, then, that at least certain combinations of filler and film will be without the scope of the claims and it cannot be concluded that the claimed invention inherently results from the combination of references.

We believe the examiner and board in turn have erred in their application of 35 U.S.C. § 103 in this case in that they did not consider the reasons for making a corrugated film having the claimed friction property. As this court pointed out in In re Sponnoble, 405 F.2d 578, 585, 56 CCPA 823, 832 (1969):

> A patentable invention, within the ambit of 35 U.S.C. § 103, *may* result even if the inventor *has*, in effect, merely combined features, old in the art, for their known purpose, without producing anything beyond the results inherent in their use. Although we believe that appellant, here, has ac-tually done more than this *in making his combination,* we also believe that a more proper, albeit not exclusive, inquiry *in a case such as this* is to look further as to the *reasons* for making the combination.

> It should not be necessary for this court to point out that a patentable invention may lie in the discovery of the source of a problem even though the remedy may be obvious once the source of the problem is identified. This is *part* of the "subject matter as a whole" which should always be considered in determining the obviousness of an invention under 35 USC § 103. [Emphasis in original.]

The examiner and board seem to have lost sight of the fact that the invention was made to overcome the problems arising when large rolls of corrugated PET film are formed. The unobvious aspect of this invention resides in the recognition of the source of the problem, i. e., that too high a surface coefficient of friction is responsible for poor roll formation. See In re Conover, 304 F.2d 680, 49 CCPA 1205 (1962). Therefore, the inquiries in the Patent Office should have been directed, in part at least, to the question of whether or not such a recognition would have been obvious to one of ordinary skill in the art. It does not appear to us that it would have been. In fact, the problem of the roll telescoping and individual layers being laterally displaced from the roll suggests that a higher coefficient of friction might be desired in order to inhibit slipping of film layers.

Of course, lubricating the film or incorporating a filler in it might very well have been obvious solutions once it was recognized that the source of the problem was a too high surface coefficient of friction. However, as we indicated in In re Sponnoble, the inquiry must go beyond the nature of the solution. We are persuaded in this case that it did not go far enough and that the conclusion that the claims are obvious is reachable only by reconstructing the invention from the prior art with the

benefit of appellants' own disclosure. Therefore, we *reverse* the rejection of claims 1–4 under 35 U.S.C. § 103.

Claims 5–7 and 9 have been rejected under 35 U.S.C. § 112. The examiner reasoned:

> In claim 5 "reducing the coefficient of friction—to below about 0.40" defines a result but fails to identify the specific act or acts required to produce the result claimed.

The board characterized this as a rejection of the claims "as unduly functional, and as insufficiently defining the steps required to obtain the desired result." The board may have been prompted to affirm this rejection by what we regard as a misunderstanding of the import of the ASME publication submitted by appellants for the purpose of describing the Bell test (see footnote 2). The board stated:

> The step of "reducing the coefficient of friction  .  .  .," which in fact is not a step but the result of an unstated step, as worded in claim 5 is not a positive requirement, because the shaped film may already have a coefficient below 0.4 at the end of the pressing step. We note that in the ASME publication submitted by appellants with their preliminary amendment of January 29, 1968 (ASME paper No. 62–WA–321, November 1962) page 5 shows in Figure 7 that polyethylene terephthalate has a coefficient of friction of about 0.15 at a low velocity. It thus appears that some grades of polyethylene terephthalate would not need the last step of claims 5, 6, 7 or 9.

■ In their request for reconsideration, appellants pointed out that the coefficient value noted by the board was that for PET film against stainless steel, whereas the value in the claims refers to the coefficient for film against film. Appellants also argued that their specification discloses that untreated PET film has a coefficient of 0.80 or higher. The board rejected this argument on the ground that the original specification fails to point out that the coefficient values referred to are for film against film. We think this is an overly technical disparagement of appellants' application. It seems quite clear from the context of the specification that the coefficients referred to must be film to film. Certainly it is the friction characteristics of film against film that create the problem in the first place.

We have also concluded that the board's other views of the claims under § 112 are not well taken. The third paragraph of that section specifically allows the use of functional language to define claim limitations. As this court said in In re Swinehart, 439 F.2d 210, 213, 58 CCPA 1027, 1031 (1971):

> We are convinced that there is no support, either in the actual holdings of prior cases or in the statute, for the proposition, put forward here, that "functional" language, in and of itself, renders a claim improper. We have also found no prior decision of this or any other court which may be said to hold that there is some other ground for objecting to a claim on the basis of *any* language, "functional" or otherwise, beyond what is already sanctioned by the provisions of 35 U.S.C. § 112.

> Assuming that an applicant is claiming what he regards as his invention, there are in reality only two basic grounds for rejecting a claim under § 112. The first is that the language used is not precise and definite enough to provide a clear-cut indication of the scope of subject matter embraced by the claim. This ground finds its basis in the second paragraph of section 112 * * *. The second is that the language is so broad that it causes the claim to have a potential scope of protection beyond that which is justified by the specification disclosure. * * * This ground of rejection is now recognized as stemming from the requirements of the first paragraph of 35 U.S.C. § 112. * * * The merits of the "functional" language in the claim before us must be tested in the light of these two requirements alone.

Neither the examiner nor the board framed the rejection under § 112 in a manner that indicates it was based upon anything but an objection to the "functional" language employed. At most, the board's rejection suggests that the language objected to might not comport with the requirements of the second paragraph since "reducing the coefficient of friction" is regarded as "not a step but the result of an unstated step" in the words of the board.

We do not agree with this characterization of the language of claim 5. It calls for an affirmative treatment of the film in a manner not stated in the claim, as the specification clearly indicates that untreated PET film has a coefficient of friction of 0.80 or higher. However, the absence in the claim of specific steps which would bring about the desired friction property is no defect. The claims define the limits of the claimed invention, and it is the function of the specification to detail how this invention is to be practiced. In our view, these requirements are met. Accordingly, the rejection of claims 5–7 and 9 under 35 U.S.C. § 112 is reversed.

Reversed.