**SYSTEMATIC TOOL & MACHINE COMPANY et al.**

v.

**WALTER KIDDE & COMPANY, INC.**

Civ. A. No. 70–1708.

United States District Court, E. D. Pennsylvania.

March 19, 1976.

Max R. Kraus, Chicago, Ill., Alan H. Bernstein, Caesar, Rivise, Bernstein & Cohen, Philadelphia, Pa., for plaintiffs.

Jacob C. Kellem, Wilmington, Del., Robert F. Finke, Chicago, Ill., Richard M. Rosenbleeth, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., Gordon D. Coplein, Darby & Darby, P. C., New York City, for defendant.

## OPINION AND ORDER

FOGEL, District Judge.

Plaintiffs in this action seek an injunction and damages from defendant for infringement of United States Letters Patent 3,369,582 (the '582 patent), granted to plaintiff Clayton Giangiulio on February 20, 1968, for a "Tomato Slic-er". Defendant marketed two machines which allegedly infringed the patent. Plaintiffs, as the holders of the patent developed and sold a machine based on their invention. In a prior Opinion and Order dated February 21, 1975, we upheld the validity of the patent and also found that defendants had infringed it. Because the case was bifurcated, we focused only on the issue of infringement and did not go into damages. Findings of Fact, Conclusions of Law, and the legal arguments for our conclusions may be found in an Opinion cited at 390 F.Supp. 178 (E.D.Pa.1975), and 185 U.S. P.Q. 281 (E.D.Pa.1975).

Subsequent to the filing of that Opinion, defendant filed exceptions to several of our Findings and Conclusions. *See* Rule 52(b) of the Federal Rules of Civil Procedure. These exceptions related to the dual issues of validity and infringement considered in the initial Opinion. A reply memorandum was submitted on behalf of plaintiffs. We have reviewed the issues and arguments raised by defendant and deny all of its exceptions.

As detailed in the prior Opinion, the validity determination is the preliminary one to be made in an infringement action. Among the issues which we had to resolve were (1) anticipation of the patent in the prior art; (2) obviousness from the prior art; and (3) the ordinary level of skill in the art. Also significant were (1) the secondary tests of commercial success: long felt need, failure of others, and copying by others; (2) the questions relating to patent invalidation (including proof that the patent was not used commercially more than one year prior to the filing of the patent); and (3) the requirement that the "best mode" for performance be set forth in the patent. 390 F.Supp. at 181.

Once validity has been found, the focus then shifts to infringement. Here the questions include: (1) the scope of the claims of the patent in controversy; (2) the issue of literal infringement of those claims; (3) the applicability of the doctrine of "file wrapper estoppel"; and (4) the relevancy of the "doctrine of equivalents." *Id.*

Defendant did not offer any additional evidence in support of its trial contentions in its exceptions to our Findings of Fact. Rather, it pointed to portions of the record which it claimed supported certain of its requested findings. It also amplified some of the legal arguments in favor of its proposed conclusions of law. Defendant's principal contentions are as follows: (1) the patent was anticipated in the prior art; (2) our findings with respect to the secondary tests are not supported by the evidence; (3) the patent did not set forth the best mode, because it did not specify an aluminum pusher; (4) insufficiency of the evidence of sales of one of the defendant's devices during the term of the patent; (5) our failure to find that there was file wrapper estoppel; and (6) our erroneous finding that defendant's second machine was the equivalent of the patent. Defendant also argues that considerably more weight should have been given to the opinion of its expert, Mr. Karr, and that we should not have placed any reliance upon the testimony of plaintiffs' experts. No exceptions were taken to forty-one of the sixty-seven findings.[1]

### 1. *Prior Art and Secondary Tests.*

Except for the specific findings dealt with *infra,* we decline to grant defendant's exceptions for the same reasons which we set forth in the prior Opinion. *See* 390 F.Supp. at 189–202. It was and is our function as fact-finder to make our determination from the evidence offered by the parties, and, when there is a conflict in the testimony, to resolve the matter based upon our view of the contradictory evidence. Rule 52 of the Federal Rules of Civil Procedure (FRCP). The burden in a civil case of this nature is upon the plaintiff to establish its case by the preponderance of the evidence. *Barr Rubber Prod. Co. v. Sun Rubber*

*Co.,* 425 F.2d 1114, 1120 (2d Cir. 1970), *cert. denied,* 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970). The factfinder is privileged to give such weight as is deemed appropriate to the testimony of witnesses, depending upon the various observed factors including credibility, forthrightness, consistency, and reaction to cross-examination. Rule 52 of the FRCP; *Graver Tank & Mfg. Co. v. Linde Air Prod. Co.,* 339 U.S. 605, 609–10, 70 S.Ct. 854, 856–57, 94 L.Ed. 1097, 1102–03 (1950). Defendant has not offered any new evidence, but instead urges us to re-evaluate testimony of which we were fully cognizant in arriving at our initial decision. We have given defendant a second bite at the apple, but we are still convinced that our initial findings on the questions of anticipation in the prior art[2] and the secondary tests[3] are supported by a preponderance of the evidence.

### 2. *Best Mode.*

The core of defendant's exception to our finding on the best mode issue is its contention that the original model for the '582 patent, which had a Lexan pusher to force the tomatoes through the blade rack, did not work, until an aluminum pusher was substituted. In Finding 49 we said:

> The performance of the "Lexan machine" equals that of the aluminum machine when the width of the slots is the same on both pieces of equipment.

390 F.Supp. at 187. This does not refer to the spacing between the blades (and hence the thickness of a slice) but to the clearance on each side of a blade as it meshes with the pusher arms. Increasing the clearance from that width on the model to that width used on commercial production machines solved the problem of the blades catching on the arms of the Lexan pusher. Since we were satisfied,

---

1. No objections were made to Findings 1 to 8, 10, 11, 15, 18 and 23, 25, 29, 30, 42 to 48, 50 to 55, 57 to 59, 61, 62, 64, 65 and 67. Exceptions were lodged against Findings 9 (Background), 12 to 14 (Development of the Patent), 16 & 17 (Patent), 24, 26, 27 & 28 (Anticipation), 31 (Obviousness), 32 to 41 (Secondary Tests), 49 (Best Mode), 56 (TK–I sales), 60 (File-wrapper estoppel), and 63 & 66 (Doctrine of Equivalents).

2. Exceptions to Findings of Fact 24, 26, 27 and 28.

3. Exceptions to Findings of Fact 32 to 41.

as stated in Finding 51 (not challenged) that the actual reasons for switching to an aluminum pusher were economic ones, including the higher price for materials, machining and modifications when Lexan is used, the occasional problems Mr. Giangiulio had with the early Lexan-pusher model did not, and still do not affect our findings on the best mode question.

### 3. *Evidence of Infringing Sales.*

In order to find infringement, the court must find an unauthorized use of the patent during the term of the patent. Defendant says it is disputable from the evidence whether any sales of the TK–I (one of the alleged infringing slicers) were made after issuance of the patent.[4] The term of a patent does not commence until the patent is issued, so there could be infringement only if sales took place after issuance. The difficulty with defendant's exception is that this was not a decision on a motion for summary judgment. A disputed material issue of fact would be significant there. Rule 56 of FRCP. Rather it was simply the stuff of which trials are made, and it was our duty to resolve the dispute. Because of the bifurcation order, evidence on specific quantities sold was not permitted. But there was testimony of several of defendant's own employees suggesting at least some sales. As we said in the prior Opinion:

> An accounting, which will be ordered in connection with the determination of damages, will reveal the amount of sales . . . with certainty.

390 F.Supp. at 198.

### 4. *File Wrapper Estoppel.*

 The core of defendant's objections to our adjudication relating to the TK–II (the second of the alleged infringing slicers) appears to be to our resolution of the file-wrapper estoppel questions.[5] When, as in the instant case, the alleged infringer is not a direct imitation of the patent, resort to the doctrine of equivalents is appropriate; that doctrine holds that a device which uses the essence of the invention, and which differs in insignificant ways with respect to that essence, may be found to infringe upon the patent. *Graver Tank & Mfg. Co. v. Linde Air Prod. Co.,* 339 U.S. 605, 607–08, 70 S.Ct. 854, 855–56, 94 L.Ed. 1097, 1101–02 (1950). A condition precedent to the patentee invoking the doctrine of equivalents is the patentee's ability to show that the principle of file-wrapper estoppel does not bar his claim. This latter term refers to the limitation of the scope of patent claims which may occur when an inventor seeks to obtain a patent after an initial rejection of his application by the patent examiner. On such occasions, the inventor may narrow the claims sufficiently to distinguish his invention from prior patents, or may narrow them to eliminate unpatentable claims. Regardless of the reason, the effect of such abandonment of the wide scope of the initial application is to estop the inventor from later using the doctrine of equivalents to recapture the breadth of the patent which he voluntarily abandoned. *See Trio Process Corp. v. L. Goldstein's Sons, Inc.,* 461 F.2d 66 (3d Cir.), *cert. denied,* 409 U.S. 997, 93 S.Ct. 319, 34 L.Ed.2d 262 (1972).

Necessarily, because there had been an initial rejection of Mr. Giangiulio's application by the patent examiner, we had to consider the allegation of file-wrapper estoppel very carefully. It was and is our judgment, based upon the exhibits and all of the testimony of the lay and expert witnesses on both sides, that the '582 patent was granted on claims which had not been narrowed from the original application in order to obtain a patent.[6] While the rejection had recited unpatentability because of two prior art patents, as well as indefiniteness, the claims in the second submission did *not* differ significantly from those contained in the initial application, except insofar

---

**4.** Exception to Finding of Fact 56.

**5.** Exception to Finding of Fact 60.

**6.** Findings of Fact 59 to 61.

as it was necessary to clarify the specific invention for the patent examiner. The reasons for the initial rejection therefore are not dispositive, when the objection of unpatentability was dropped in granting the patent, without any narrowing of the claims. This critical finding on this score led us to conclude that the doctrine of file-wrapper estoppel to bar the doctrine of equivalents was not applicable and never could be invoked in the manner it was by plaintiffs.

### 5. *Functional Equivalency.*

Defendant also takes exception to our findings that the TK–II is the functional equivalent of the '582 patent.[7] Particularly, defendant cites the testimony of its expert that there is no constraint on the tomato by the arm of the TK–II, and that the shallow angle of initiation is maintained for only a small fraction of the movement of the arm. As we stated in our prior Opinion, the fact questions relating to the equivalence of the TK–II and the patent were the subject of substantial evidence both in weight and in amount, produced at the trial. 390 F.Supp. at 201.

We heard from experts on both sides. We also had the opportunity to observe the actual operation of the TK–II first-hand. Our findings were based on all of the evidence presented, and not just on the statements of a single expert. In particular, we were able to observe the path of the tomato and the nature of the forces applied to it by the pusher. Each time the machine was operated, the path followed by a tomato was identical. Each time, the tomato followed a path which, while slightly curved, was still always at a slight angle to the blades, over the first third of the tomato's passage through those blades. The arm, which was the only object pushing the tomato, was responsible for guiding the fruit along this predictable path. We therefore found that the TK–II was performing the same function in essentially the same way to accomplish the same pur-

pose. No valid basis has been suggested for us to overturn that finding.

Defendant urges that we change our prior Conclusions of Law because they are inconsistent with its proposed findings of fact. We find no contention which questions the legal principle we applied in determining patent infringement. Since we have declined to accept defendant's proposed findings, and since we instead have reaffirmed our prior findings, our conclusions of law will not be altered.

### 6. *Conclusion.*

While no further exposition is required, we believe that it would be well for us to repeat several facets of our original discussion, since it appears from the exceptions which were submitted that defendant is not completely cognizant of the reasons for our conclusions. As we stated in Finding of Fact 30, the basic elements of the '582 patent were well established in the prior art. However, the arrangement of these elements to solve a problem which had evaded solution was not known in the prior art, nor, in our opinion, had it been disclosed or anticipated. The '582 patent described the problem which it had been developed to alleviate, and explained the cause of prior difficulties encountered in attempting to slice tomatoes in a commercially operable, mechanical, high-speed, single-pass device. The prior art, both that cited in the patent application, and the similar additional cases cited by defendant in its defense, did not consider the problem; these machines had been designed to deal with very different varieties of vegetables and fruits. Thus, we found in the '582 patent a new combination of old elements, arranged according to specified requirements for the purpose of solving the particular problems uniquely associated with slicing tomatoes.

■ The Patent Office and the courts of the United States have recognized on repeated occasions that patentable inven-

---

**7.** Exceptions to Findings of Fact 63 and 66.

tion can be found in the recognition of the cause of a problem and its solution, even though the particular solution may seem obvious, once the cause of the problems had been accurately diagnosed. *See United States v. Adams,* 383 U.S. 39, 51, 86 S.Ct. 708, 714, 15 L.Ed.2d 572, 580 (1966); *Application of Roberts,* 470 F.2d 1399, 1401 (C.C.P.A.1973); *Application of Sponnoble,* 56 C.C.Pa. 823, 405 F.2d 578, 585 (1969); *Zysset v. Popeil Bros.,* 276 F.2d 354, 357 (7th Cir. 1960). On this basis, Mr. Giangiulio's invention was patentable.

We have already disposed of the contention about the applicability of the doctrine of file-wrapper estoppel. With respect to the doctrine of equivalents, we concluded then and reaffirm now that:

> We believe that the "TK–II" is merely a different-*looking* method of doing that which plaintiff's [invention] achieves in the same manner and for the same purpose.

390 F.Supp. at 202. *See Graver Tank & Mfg. Co. v. Linde Air Prod. Co.,* 339 U.S. 605, 607, 70 S.Ct. 854, 855, 94 L.Ed. 1097, 1101 (1950); *Kolene Corp. v. Motor City Metal Treating, Inc.,* 440 F.2d 77, 82 (6th Cir. 1971); *Zysset v. Popeil Bros.,* 276 F.2d 354, 357–58 (7th Cir. 1960).

■ Defendant's exceptions to the Findings of Fact and Conclusions of Law set forth in our Opinion of February 21, 1975, are therefore denied, and we affirm and readopt those Findings and Conclusions. An Order to proceed on the question of damages will issue accordingly.