SEAL–FLEX, INC., Plaintiff–Appellee,

v.

ATHLETIC TRACK AND COURT CONSTRUCTION, Defendant–Appellant,

and

Owen E. Perry, Sanctioned Party–Appellant.

Nos. 97–1432, 97–1504 and 98–1045.

United States Court of Appeals, Federal Circuit.

April 1, 1999.

Thomas N. Young, Young & Basile, P.C., of Troy, Michigan, argued for plaintiff-appellee.

Owen E. Perry, Reising, Ethington, Learman & McCulloch, of Troy, Michigan,

argued for defendant-appellant and sanctioned party-appellant. With him on the brief were William J. Schramm, and Andrew M. Grove. Of counsel was Richard W. Hoffmann.

Before NEWMAN, RADER, and BRYSON, Circuit Judges.

Opinion for the court filed PER CURIAM. Concurring opinions filed by Circuit Judge RADER, and Circuit Judge BRYSON in which Circuit Judge PAULINE NEWMAN joins.

PER CURIAM.

Seal–Flex, Inc. is the assignee of U.S. Patent Nos. 4,474,833 (the '833 patent) and 4,529,622 (the '622 patent). In 1991, Seal–Flex sued Athletic Track and Court Construction (AT & CC) in the United States District Court for the Eastern District of Michigan for infringement of both patents. The district court bifurcated proceedings for trial. At the first trial, the jury determined that AT & CC had literally infringed the '622 patent.

After the first trial, the district court granted Seal–Flex's motion for discovery sanctions against AT & CC and struck AT & CC's affirmative defenses and counterclaims. *See Seal–Flex, Inc. v. Athletic Track & Court Constr.*, No. 91–CV–60494–AA (E.D. Mich. June 12, 1997) (order granting motion for emergency sanctions). After the parties agreed to a stipulated damage award, the district court entered judgment against AT & CC. *See Seal–Flex, Inc. v. Athletic Track & Court Constr.*, No. 91–CV–60494–AA (E.D. Mich. June 12, 1997) (order entering judgment). The district court also ordered AT & CC and Owen E. Perry, its attorney, to pay Seal–Flex attorney fees. *See Seal–Flex, Inc. v. Athletic Track & Court Constr.*, No. 91–CV–60494–AA (E.D.Mich. Sept. 18, 1997) (order granting Seal–Flex's motion for attorney fees). AT & CC and Perry now appeal. Because substantial evidence supports the jury's determination that AT

& CC literally infringed the '622 patent and the district court did not abuse its discretion by imposing sanctions, this court affirms.

## I.

Because Seal–Flex did not appeal the district court's entry of judgment of non-infringement of the '833 patent, this appeal involves only the '622 patent. The '622 patent discloses a method for constructing an all-weather activity mat on a foundation. The foundation typically consists of asphalt or concrete. The mat consists of layers of particulate rubber bound together with latex. Mats constructed according to the claimed method are often used as running tracks. Claim 1 of the '622 patent sets forth the claimed construction process at issue in this appeal:

A method for constructing an activity mat over a foundation comprising the steps of:

*spreading an adhesive tack coating for adhering the mat to the foundation over the foundation surface;*

spreading a first uniform layer of particulate rubber over the tack coating;

then, in sequence, first applying a liquid latex binder to the previously spread rubber layer in sufficient quantity to coat substantially all rubber particles of said layer then air drying said applied mixture until substantially no liquid is visible, then spreading a succeeding uniform layer of particulate rubber over the preceding layers; and

continuing the aforesaid sequential application of latex binder, air drying the binder followed by the spreading of a uniform layer of rubber over the preceding layers until the approximate desired thickness for the mat is achieved.

(emphasis added).

According to this method, the builder first spreads a suitable tack coating uniformly over the foundation surface. Col. 2, ll. 16–17. As suitable tack coatings, the specification of the '622 patent specifically mentions emulsified asphalt diluted 50% by water, such as SS1H, hot applied asphalt, urethanes, and modified epoxies. Col. 2, ll. 18–32. The written description further clarifies that other materials can serve as the tack coating if they perform the function of adhering the mat to the foundation. Col. 2, ll. 25–26. Beyond this general observation, the specification does not expressly mention latex as a tack coating.

The next step in this method involves spreading a layer of particulate rubber over the tack coat. Col. 2, ll. 36–40. Then the builder may add a second coating of the adhesive tack coat material followed by a second layer of particulate rubber. Col. 3, ll. 14–38. To add other layers, the builder applies a liquid binder, such as latex, air dries the binder, and then applies a layer of rubber particles. Col. 3, ll. 40–52, col. 4, ll. 16–23. This process continues until the mat has reached its prescribed thickness. The builder completes the project by applying a final sealing coat of binder material. Col. 5, ll. 6–10. Although Seal–Flex does not construct any activity mats itself, each of its shareholders is licensed to practice this patented process.

AT & CC builds and repairs all-weather running tracks throughout the United States. After becoming aware of AT & CC's track construction techniques, Seal–Flex sued AT & CC for patent infringement in 1991. In response, AT & CC raised the affirmative defenses of patent invalidity under 35 U.S.C. §§ 102(b) and 103. AT & CC also counterclaimed. The counterclaim sought a declaratory judgment that the patents were invalid, that Seal–Flex had engaged in unfair competition, and that Seal–Flex had committed antitrust violations.

On September 19, 1994, the district court granted AT & CC's motion for summary judgment of invalidity based on § 102(b) statutory bars. The district court concluded that the claimed invention had been in public use and that the inventor,

Marvin Maxfield, had sold the claimed invention—both more than one year before the filing date of both patents. *See Seal–Flex, Inc. v. Athletic Track & Court Constr.*, 870 F.Supp. 753 (E.D.Mich.1994). On an appeal from that decision, however, this court discerned genuine factual disputes and vacated the summary judgment. *See Seal–Flex, Inc. v. Athletic Track & Court Constr.*, 98 F.3d 1318, 1324, 40 USPQ2d 1450, 1455 (Fed.Cir.1996).

On remand, the district court set a trial date of March 13, 1997, to determine AT & CC's liability for infringement of the '833 and '622 patents. A separate trial would follow, if necessary, to address damages and AT & CC's defenses and counterclaims. In its order scheduling these proceedings, the district court set the closing date for all discovery as January 31, 1997. *Seal–Flex, Inc. v. Athletic Track & Court Constr.*, No. 91–CV–60494–AA (E.D.Mich. Dec. 16, 1997) (order scheduling proceedings).

On March 6, 1997, Seal–Flex filed a motion requesting the district court to compel AT & CC to produce specific documents withheld during discovery. In an accompanying affidavit, Seal–Flex's attorney stated that she had gone to Perry's office and reviewed AT & CC documents that had not yet been produced by February 25, 1997. She marked documents which Perry agreed to copy and deliver to Seal–Flex. Two days later, however, Perry called and stated that his client would not allow him to deliver the documents. Based on the affidavit, the district court granted Seal–Flex's motion to compel and further ordered AT & CC to "produce [within three days] all documents relating to all rubber/latex track construction projects in which it has participated." *Seal–Flex, Inc. v. Athletic Track & Court Constr.*, No. 91–CV–60494–AA, slip op. at 2 (E.D.Mich. March 10, 1997) (order granting motion to compel). The district court warned AT & CC that failure to produce these documents would be considered "a serious abuse of the litigation process, for which . . . sanctions may be imposed." *Id.*

The district court held a liability trial between March 18 and March 25, 1997. At trial, Seal–Flex produced evidence that AT & CC built all-weather tracks with an infringing method. In particular, Seal–Flex introduced a videotape showing AT & CC's construction of a track in Eaton Rapids, Michigan. The video showed that, at Eaton Rapids, AT & CC began construction by spraying the foundation with a coat of latex. AT & CC then allowed this coat to dry before spreading a layer of particulate rubber across the latex-coated foundation. AT & CC next applied liquid latex as a binder. After the binder dried, AT & CC applied additional layers of particulate rubber and latex to achieve the desired thickness. Between layers, AT & CC always allowed the latex to dry before applying the next layer.

AT & CC did not dispute that it used this method at Eaton Rapids. Rather, AT & CC maintained that the Eaton Rapids method was not its customary track construction method. At trial, Roger Lehmann, AT & CC's president, testified that the architect at Eaton Rapids had insisted upon using that particular method. Lehmann further testified that AT & CC normally spread the particulate rubber over the foundation before applying the first coat of latex. AT & CC would then add subsequent layers to the track by applying a layer of rubber and spraying a layer of latex over it, as at Eaton Rapids. Lehmann testified that this normal process allowed him to save a day's labor in track construction. At least one Seal–Flex shareholder testified that he also used this method on occasion.

At trial, the main dispute concerned whether latex satisfied the "adhesive tack coating" limitation of the first element of claim 1 of the '622 patent. AT & CC contended that the claims do not encompass the use of latex as the "adhesive tack coating." Both AT & CC and Seal–Flex agreed that the first element of claim 1 of

the '622 patent invoked the application of 35 U.S.C. § 112, ¶ 6 (1994). In accordance with the parties' agreement, the district court therefore instructed the jury that in order to find literal infringement of claim 1 of the '622 patent, it must find that AT & CC uses a material to perform the identical function and that the material used for performing that function was the same as or equivalent to the corresponding materials disclosed in the specification.

At the conclusion of the liability trial, the jury returned a verdict finding that AT & CC had literally infringed the '622 patent. Specifically, the jury answered in response to a special interrogatory that "Athletic Track ha[d] infringed" claims 1, 3, 4, 5, 6, and 7 of the '622 patent. The jury also determined that "Athletic Track ha[d] infringed at least one claim of [the '833 patent] under the Doctrine of Equivalents." The jury response, however, only identified infringement of several dependent claims of the '833 patent without a finding that any of its independent claims were also infringed. To resolve this inconsistent verdict, the district court entered judgment of non-infringement with respect to the '833 patent.[1] *See Seal–Flex, Inc. v. Athletic Track & Court Constr.*, No. 91–CV–60494–AA, slip. op. at 3 (E.D.Mich. March 27, 1997) (order denying renewed motions for JMOL). The district court then scheduled the trial on damages and AT & CC's defenses and counterclaims for May 6, 1997.

Because of AT & CC's continued refusal to turn over certain documents, on April 10, 1997, Seal–Flex filed an emergency motion for sanctions. In its motion, Seal–Flex argued that AT & CC still had not fully complied with the district court's March 10 order compelling production of "all documents relating to all rubber/latex track construction projects in which it has participated." The district court held a hearing to consider Seal–Flex's motion. At the hearing, AT & CC's president, Lehmann, admitted that he had destroyed records relating to the lawsuit. After considering Lehmann's testimony and AT & CC's attorney's arguments, and after reviewing the relevant documents, the district court determined that AT & CC and Perry had "willfully violated the March 10, 1997, order." *Seal–Flex, Inc.*, slip op. at 2 (June 12, 1997) (order granting motion for sanctions). As a sanction, the court dismissed AT & CC's patent invalidity defenses and counterclaims and awarded Seal–Flex $20,000 in attorney fees, incurred due to AT & CC's abuse of the discovery process. *See id.*, slip op. at 22–23. The court held AT & CC and Perry jointly and severally liable for the attorney fee award. *See id.*, slip op. at 23. The court further dismissed AT & CC's unfair competition and antitrust counterclaims for failure to prosecute. *See id.*

After the district court imposed sanctions, the only issue remaining for trial was the amount of Seal–Flex's damages for AT & CC's infringement of the '622 patent. On the day the damages trial was to begin, the parties reached an agreement and stipulated to a damage award. The court therefore entered judgment in favor of Seal–Flex on the infringement of claims 1, 4, 5, 6, and 7 of the '622 patent for the amount stipulated.[2] *See Seal–Flex, Inc. v. Athletic Track & Court Constr.*, No. 91–

---

1. In response to this verdict, both AT & CC and Seal–Flex renewed motions for judgment as a matter of law. Because the parties agreed that "there can be no infringement of a dependent claim unless the corresponding independent claim is infringed," the district court denied Seal–Flex's motion on the merits, and entered judgment "pursuant to the jury's verdict under Fed.R.Civ.P. 49(b) and 58(2)." *Seal–Flex, Inc. v. Athletic Track & Court Constr.*, No. 91–CV–60494–AA, slip. op. at 3 (E.D.Mich. March 10, 1997) (order granting motion to compel). AT & CC's motion was denied as moot. *See id.* Because Seal–Flex did not appeal this judgment of non-infringement, this court does not address the district court's procedures under Fed.R.Civ.P. 49(b) (1997).

2. Seal–Flex waived the jury's finding of infringement with respect to claim 3.

CV–60494–AA, slip op. at 1 (June 12, 1997) (order entering judgment).

On appeal, AT & CC challenges the jury's determination that it literally infringed the '622 patent. AT & CC contends that its use of latex to bind the initial layer of rubber particles to the foundation removes it from coverage by the "adhesive tack coating" limitation in the claimed method. Specifically, AT & CC argues that latex is not equivalent to the "adhesive tack coating" materials disclosed in the specification. AT & CC also challenges the district court's imposition of sanctions. AT & CC complains that the district court abused its discretion by dismissing its patent invalidity defenses and counterclaims and by awarding attorney fees for violation of the March 10 discovery order. Finally, AT & CC challenges the district court's dismissal of its antitrust and unfair competition counterclaims for failure to prosecute.

## II.

To determine infringement, this court prescribes a two step analysis: "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.,* 15 F.3d 1573, 1576, 27 USPQ2d 1836, 1839 (Fed.Cir.1993). This court reviews the first step, claim construction, without deference to the trial court. *See Cybor Corp. v. FAS Technologies, Inc.,* 138 F.3d 1448, 1454–56, 46 USPQ2d 1169, 1172–75 (Fed.Cir.1998) (en banc); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979–81, 34 USPQ2d 1321, 1329–31 (Fed.Cir.1995) (en banc), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). However, where, as here, the parties agree to a particular construction of the claims which is adopted by the district court, and neither party disputes that construction on appeal, this court declines to raise an issue *sua sponte* which the parties have not presented on appeal.

To show infringement of a patent, a patentee must supply sufficient evidence to prove that the accused product or process contains, either literally or under the doctrine of equivalents, every limitation of the properly construed claim. *See Rohm & Haas Co. v. Brotech Corp.,* 127 F.3d 1089, 1092, 44 USPQ2d 1459, 1462 (Fed.Cir.1997); *Pennwalt Corp. v. Durand–Wayland,* 833 F.2d 931, 934, 4 USPQ2d 1737, 1739 (Fed.Cir.1987) (en banc). Infringement requires proof by a preponderance of the evidence. *See SSIH Equipment S.A. v. United States International Trade Comm'n,* 718 F.2d 365, 376, 218 USPQ 678, 688 (Fed.Cir.1983). This court affirms a jury's determination that the accused device or process contains every limitation of the claim if it is supported by substantial evidence. *See Young Dental Mfg. Co. v. Q3 Special Prods., Inc.,* 112 F.3d 1137, 1141, 42 USPQ2d 1589, 1592 (Fed.Cir.1997).

Claim 1 of the '622 patent recites in part: "A method for constructing an activity mat over a foundation comprising the steps of … spreading an adhesive tack coating for adhering the mat to the foundation over the foundation surface." AT & CC contends that it did not infringe the '622 patent because it used latex, rather than the tack coating materials disclosed in the specification, to perform the function recited in this "spreading" step. AT & CC emphasizes that the specification does not expressly disclose latex as a suitable tack coating.

According to agreement by the parties, the district court interpreted this claim element to invoke 35 U.S.C. § 112, ¶ 6.[3]

---

**3.** Although both parties agree to the application of § 112, ¶ 6, there is apparently some confusion between them over whether this is a means or a step-plus-function claim element. According to AT & CC, the parties agreed "that the first step in '622 patent Claim 1 involves a … 'means-plus-function' element." Seal–Flex's trial arguments, how-

Although this court has previously held that, in § 112, ¶ 6, "structure" and "material" are associated with means-plus-function claim elements while "acts" is associated with step-plus-function claim elements, *see O.I. Corp. v. Tekmar Co. Inc.*, 115 F.3d 1576, 1583, 42 USPQ2d 1777, 1782 (Fed.Cir.1997) ("In this paragraph, structure and material go with means, acts go with steps."), the district court's jury instructions apparently combined mean-plus-function and step-plus-function analyses. Specifically, the district court instructed the jury that

> Claim 1 of [the '622] patent includes the step of spreading an adhesive tack coating for adhering the mat to [the] foundation over the foundation surface, which is written in the form of a step for performing a function. An element in a claim for a combination may be expressed as a step for performing a specified function without the recital of material, or acts in support thereof, and such claim shall be construed to cover the corresponding material or acts described in the specification and equivalents thereof.

After thus instructing the jury that this claim element was in step-plus-function form, the district court instructed the jury to decide "whether [AT & CC] used a material which performed the function of adhering the mat to the foundation over the foundation surface." The district court next instructed the jury that if it found that AT & CC used a material to perform this function, it must then "determine whether the material [used by AT & CC] is the same as those disclosed by that function in the patent specification or an equivalent." Therefore, the district court instructed the jury to determine whether the material used by AT & CC for performing the claimed function was equiva-

lent to those disclosed in the '622 patent specification. As a whole, these instructions are more consistent with an assumption that the claim element is in means-plus-function form than an assumption that it is in step-plus-function form.

■ Section 112, ¶ 6 of title 35 obligates this court to interpret each functional element in a combination claim by reference to the corresponding structure, material, or acts described in the specification and their equivalents. In applying § 112, ¶ 6, the district court limited the term "adhesive tack coating" to the "material described ... in the specification and equivalents thereof," i.e., the "suitable tack coating materials" disclosed in the specification and those which "result[ ] from an insubstantial change which adds nothing of significance to the materials disclosed." Based on this instruction, the jury determined that latex qualified as an equivalent tack coating material to those disclosed in the specification of the '622 patent. Because both parties agree to the application of § 112, ¶ 6, the only issue before this court is whether substantial evidence supports the jury finding of equivalence between latex, as used by AT & CC, and the materials disclosed for performing the "adhering" function in the '622 patent specification.

The district court appropriately instructed the jury that the test for equivalency under § 112, ¶ 6 is whether the accused material is "insubstantially different" from the material disclosed in the specification for performing the claimed function. *See Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1309, 46 USPQ2d 1752, 1756 (Fed.Cir.1998) ("The proper test [for determining equivalence under § 112, ¶ 6] is whether the differences between the structure in the

ever, make it clear that Seal–Flex interpreted this as a step-plus-function element. The district court also apparently believed this element was in step-plus-function form, but gave a jury instruction implicating means-plus-function considerations. In it's appeal brief,

Seal–Flex states only that the parties agreed "that the language used in '622 claim 1 brought § 112 equivalents into play" without further identifying whether means or step-plus-function treatment is appropriate.

accused device and any disclosed in the specification are insubstantial."); *Valmont Indus., Inc. v. Reinke Mfg. Co.*, 983 F.2d 1039, 1043, 25 USPQ2d 1451, 1455 (Fed. Cir.1993) ("In the context of section 112 . . . an equivalent results from an insubstantial change which adds nothing of significance to the structure, material, or acts disclosed in the patent specification."); *Alpex Computer Corp. v. Nintendo Co.*, 102 F.3d 1214, 1222, 40 USPQ2d 1667, 1673 (Fed.Cir.1996) (noting that equivalents under § 112, ¶ 6, and under the doctrine of equivalents both relate to insubstantial changes). The testimony of both parties as well as the prosecution history of the '622 patent fully support the jury's conclusion that latex is the equivalent of the "suitable tack coating materials" disclosed in the specification and is therefore literally an "adhesive tack coating" as required by the claim.

The specification of the '622 patent discloses emulsified asphalt, hot applied asphalt, most urethanes, and modified epoxies as appropriate adhesive tack coating materials. Although AT & CC correctly points out that the specification does not expressly list latex as a suitable tack coating material, the record shows that latex is insubstantially different from the adhesive tack coatings described in the specification. For instance, the record shows comparisons of emulsified asphalt, one of the materials described in the specification, and latex. Both materials are water based, have similar viscosities, and can be applied at ambient temperature with the same spray equipment. Furthermore, in his own testimony, Lehmann admitted that he had used latex as a tack coat even when the specifications for a project called for asphalt emulsion. This testimony shows that even AT & CC's president considered latex to be equivalent to the adhesive tack coating materials disclosed in the specification.

The prosecution history is also insightful. As initially drafted, the claim described the first step of the process as "spreading a tack coating over the foundation surface." The examiner objected to the indefiniteness of this language: "The term[ ] 'tack coating' in claim 1 read[s] on 'the liquid latex binder' and various resinous materials outside the scope of applicant's specification." The examiner did not find any prior art that used latex to adhere the mat to the foundation, but was instead concerned that the claim language was not clear enough.

In response to the examiner's objection, the applicant added the word "adhesive" before "tack coating" and clarified its intention to cover broadly "any material," including latex, that could serve as an adhesive tack coating:

> [C]laim 1 has been amended to add the words "adhesive" and "for adhering the mat to the foundation" to define the term "tack coating". . . . [A]pplicant is entitled to have the term construed to mean any materials suitable for adhering the remaining materials of the mat to the foundation surface in the manner discussed in the specification, whether or not such materials are among those listed as examples and discussed in the specification.

This part of the administrative record during prosecution shows that the applicant intended to cover a broad range of adhesive tack coatings, including latex.

In arguing that the jury verdict is not supported by substantial evidence, AT & CC pulls one passage from the specification out of context. In this passage, the specification advises a particular installation course "if a relatively thick tack coating of hot asphalt is used." Col. 3, ll. 7–8. In that event, the specification counsels that "it may be desirable to utilize the larger rubber particles for the first layer of the mat. The asphalt tack coating can effectively adhere such larger particles to the foundation." Col. 3, ll. 7–11. AT & CC argues that this passage shows that the adhesive tack coating must be able to function alone to adhere the particles to the foundation surface without the need

for a binding agent and that latex therefore cannot serve as the adhesive tack coating. This statement, however, only shows that in some defined situations, the particulate rubber may adhere to the tack coating before application of the latex binder. It simply describes a modification of the claimed process when a "relatively thick coat" of a specific tack coating material is used. This additional guidance in the specification does not limit the process outside the context of a thick coating of asphalt. *See Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 867, 228 USPQ 90, 93 (Fed.Cir.1985) (advising against reading limitations from the specification into the claims). The reference identified by AT & CC does not show that latex cannot function as the tack coating.

The specification also discusses the optional application of a second layer of asphalt to adhere the particulate rubber to the first adhesive tack coat. *See* Col. 3, ll. 14–28. The implication of these passages is that the adhesive tack coating does not necessarily function alone to adhere the particulate rubber to the foundation before application of the latex binder. AT & CC cannot alter the plain meaning of the claim language by referring to parts of the specification out of context.

Finally, AT & CC argues that the Eaton Rapids video does not depict its customary method of installing tracks. AT & CC argues that its customary method, which it purportedly used for every track construction project except Eaton Rapids, does not infringe the '622 patent. AT & CC's arguments are misdirected. The videotape of AT & CC's construction at Eaton Rapids shows an infringing method. As discussed above, the jury's finding of infringement is supported by substantial evidence. Although AT & CC's alleged customary use of a different, non-infringing method might serve to limit damages, that issue is not before this court because of AT & CC's stipulation to a damage award.

Substantial evidence therefore supports the jury's finding of literal infringement of the '622 patent. This court has considered the other issues related to infringement of the '622 patent raised in AT & CC's briefs. None of them warrant disturbance of the jury's verdict or the district court's judgment.

## III.

The imposition of sanctions for misconduct during discovery is not unique to this court's jurisdiction. *See, e.g., Wexell v. Komar Indus., Inc.*, 18 F.3d 916, 919, 29 USPQ2d 2017, 2020 (Fed.Cir.1994) (reviewing discovery sanctions under Sixth Circuit standards); *Badalamenti v. Dunham's, Inc.*, 896 F.2d 1359, 1362, 13 USPQ2d 1967, 1970 (Fed.Cir.1990) (same). Accordingly, this court applies the law of the pertinent regional circuit, in this case the United States Court of Appeals for the Sixth Circuit. *See Pro–Mold & Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1574, 37 USPQ2d 1626, 1631 (Fed.Cir. 1996). The Sixth Circuit reviews a district court's decision to impose sanctions for misconduct during discovery for an abuse of discretion. *See Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 366 (6th Cir. 1997). "An abuse of discretion occurs when this court has 'a definite and firm conviction that the trial court committed a clear error of judgment.'" *Miller v. Lorain County Bd. of Elections*, 141 F.3d 252, 259 (6th Cir.1998) (quoting *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir.1989)).

After an extensive hearing on Seal–Flex's motion for sanctions, the district court dismissed AT & CC's defenses and counterclaims for invalidity of the '833 and '622 patents and ordered AT & CC and Perry to pay Seal–Flex $20,000 in attorney fees. AT & CC challenges both sanctions. AT & CC also challenges the dismissal of its counterclaims for unfair competition and antitrust violations for failure to prosecute.

Due process requires that the claim dismissed for failure to comply with

a discovery order "must be specifically related to the particular 'claim' which was at issue in the order." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 707, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); *see also Hammond Packing Co. v. Arkansas,* 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530 (1909). In this case, the district court specifically found that AT & CC had withheld documents that were relevant to both the liability and damages portions of the case:

> The discovery abuses perpetrated by defendant and his attorney are so insidious and have so prejudiced the plaintiff, both in the [liability] trial which has taken place, and in plaintiff's preparation for the damages trial, which was to begin shortly, that the court simply cannot allow this culpable defendant and his compliant attorney to now present their claims.

*Seal–Flex,* slip op. at 20–21 (June 12, 1997) (order granting motion for emergency sanctions). Evidence of AT & CC's use of the claimed method would have been evidence of copying relevant to AT & CC's assertion that the '833 and '622 patents were invalid under 35 U.S.C. § 103. Therefore, the material the AT & CC did not produce was specifically related to AT & CC's counterclaim. The district court's order therefore complies with the due process requirement enunciated by the Supreme Court.

The dismissal of AT & CC's counterclaims was also consistent with Sixth Circuit law. The Sixth Circuit considers four factors in reviewing a district court order dismissing all or part of an action as a discovery sanction: (1) whether the failure to cooperate was due to willfulness, bad faith, or fault; (2) whether the failure to cooperate prejudiced the adversary; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were considered. *See Regional Refuse Systems, Inc. v. Inland Reclamation Co.,* 842 F.2d 150, 153–55 (6th Cir.1988).

In this case, the district court found that AT & CC's willful failure to comply with the March 10 order prejudiced Seal–Flex. *See Seal–Flex,* slip op. at 15 (June 12, 1997) (order granting motion for emergency sanctions) ("Defendant's deliberate obstructionist and deceitful tactics have wasted substantial judicial resources [and] there appears to be no practical way for the information that has been destroyed to be reconstructed."). The March 10 order warns that noncompliance was considered "a serious abuse of the litigation process, for which … sanctions may be imposed pursuant to Fed.R.Civ.P. 37(b) and/or the inherent powers of the court." *Seal–Flex,* slip op. at 2 (March 10, 1997).

Dismissal of a claim is one of the sanctions listed in Rule 37(b). Although the Sixth Circuit has upheld a sanction order dismissing a claim without explicit consideration of a lesser penalty, *see Harmon,* 110 F.3d at 369, in this case, the district court implicitly considered lesser sanctions. The district court stated:

> This court is well aware that the sanction of dismissal is an extreme sanction which is not to be imposed lightly…. [However,] considering the defendant's and his attorney's deliberate destruction and withholding of evidence, almost any sanctions the court could impose appear woefully inadequate to compensate [Seal–Flex] for the intentional transgressions committed.

*Seal–Flex,* slip op. at 20 (June 12, 1997) (order granting motion for emergency sanctions). AT & CC did not identify any clear error in the district court's judgment. Therefore, the district court did not abuse its discretion by dismissing AT & CC's counterclaims for invalidity.

AT & CC also complains that the award of attorney fees lacks a basis in the attorney's billing records. However, before the district court issued its order setting the size of the award, Seal–Flex had submitted records supporting an award of $27,454.30. The district court awarded $20,000. AT &

CC's attorney fees argument is therefore without merit.

██ Finally, AT & CC argues that the district court improperly dismissed AT & CC's antitrust and unfair competition claims for failure to prosecute. However, AT & CC shows no evidence of its good faith pursuit of these claims. Furthermore, to the extent that these claims depended upon the invalidity of the '833 and '622 patents, AT & CC cannot successfully pursue them after the sanction order. Therefore, the district court did not abuse its discretion in dismissing these claims.

## IV.

There is substantial evidence to support the jury's verdict that AT & CC literally infringed the '622 patent. Furthermore, the district court did not abuse its discretion in dismissing AT & CC's counterclaim for invalidity of the '833 and '622 patents and in dismissing the antitrust and unfair competition claims for failure to prosecute.

## COSTS

Costs awarded in favor of Seal–Flex.

*AFFIRMED.*

RADER, Circuit Judge, concurring.

Because resolution of this case requires an assessment of whether 35 U.S.C. § 112, ¶ 6 applies to the claim element at issue under either a means or step-plus-function analysis, I concur.

This court has repeatedly said that claim construction is a matter of law. *See Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1454–56, 46 USPQ2d 1169, 1172–75 (Fed.Cir.1998) (en banc); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979–81, 34 USPQ2d 1321, 1329–31 (Fed. Cir.1995) (en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). This doctrine gives this court the obligation to review claim interpretation. In addition to that obligation, the parties' agreement on claim interpretation invokes special treatment under title 35. Therefore, I believe this court has an obligation to independently determine whether § 112, ¶ 6 applies to the claim element at issue in this case. Particularly, I believe that identifying whether this element is a means-plus-function element, a step-plus-function element, or neither, is crucial to a proper determination of this case.

The facts show that the parties themselves were uncertain about applying § 112, ¶ 6. The district court's jury instructions further reflect this confusion. The relevant portion of claim 1 of the '622 patent recites: "A method for constructing an activity mat over a foundation comprising the *steps of . . . spreading an adhesive tack coating for adhering the mat to the foundation over the foundation surface.*" (emphasis added). Both parties assumed that this element invoked § 112, ¶ 6. The parties, however, did not agree on whether it was a means-plus-function or a step-plus-function claim element. According to AT & CC, "[b]y agreement of the parties, the [district court] instructed the jury that the first step in '622 patent Claim 1 involves a [§ 112, ¶ 6] 'means-plus-function' element." Seal–Flex's trial arguments, however, identify this as "a claim[ ] that define[s] a step in terms of a function only." Seal–Flex, therefore, apparently interpreted this as a step-plus-function claim element. In its appeal brief, Seal–Flex states only that the parties agreed "that the language used in '622 claim 1 brought § 112 equivalents into play" without further identifying whether means or step-plus-function treatment is appropriate.

The district court also apparently believed this element was in step-plus-function form, as is indicated by its instruction to the jury that this element is "written in the form of a step for performing a function." Nevertheless, the district court gave further jury instructions implicating means-plus-function considerations. Specifically, the district court instructed the jury that in order to find infringement, it

must find both identity of function and use of a *material* for performing that function that was the same as or equivalent to the material disclosed in the specification. Although similar, means and step-plus-function claim elements are not identical and require distinct analyses.

This court has rarely examined step-plus-function claim elements; however, the language of § 112, ¶ 6 and this court's means-plus-function case law give guidance for determining whether a claim element is in step-plus-function form so as to invoke the statute's claim interpretation requirements. The statute explicitly authorizes expressing claim elements in both means-plus-function and step-plus-function form:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claims shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112, ¶ 6. The statute's format and language suggest a strong correlation between means and step-plus-function claim elements in both their identification and interpretation. Based on the arrangement of § 112, ¶ 6, it is apparent that "structure" and "material" are associated with "means," while "acts" is associated with "step." *See O.I. Corp. v. Tekmar Co. Inc.*, 115 F.3d 1576, 1583, 42 USPQ2d 1777, 1782 (Fed.Cir.1997) ("In this paragraph, structure and material go with means, acts go with steps."). Therefore, a claim element deserves means-plus-function treatment when "expressed as a means ... for performing a specified function without the recital of *structure* [or] *material* ... in support thereof." *Id.* (emphasis added). Similarly, a claim element deserves step-plus-function treatment when "expressed as a ... step for performing a specified function without the recital of ... *acts* in support thereof." *Id.* (emphasis added).

The correlation between means-plus-function and step-plus-function claim elements assists the difficult process of identifying step-plus-function claim elements. This court has set forth a structured analysis for determining whether the elements of a claim are in means-plus-function form. Specifically, if the word "means" appears in the claim element, there is a presumption that it is a means-plus-function element to which § 112, ¶ 6 applies. *See Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1427, 44 USPQ2d 1103, 1109 (Fed.Cir.1997); *Greenberg v. Ethicon Endo–Surgery, Inc.*, 91 F.3d 1580, 1583, 39 USPQ2d 1783, 1785 (Fed.Cir.1996). This presumption is overcome if the claim itself recites sufficient structure or material for performing the claimed function or when it fails to recite a function associated with the means. *See Sage*, 126 F.3d at 1427–28; *York Prods., Inc. v. Central Tractor Farm & Family Ctr.*, 99 F.3d 1568, 1574, 40 USPQ2d 1619, 1623 (Fed.Cir.1996).

When an element of a claim does not use the term "means," treatment as a means-plus-function claim element is generally not appropriate. *See Mas–Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1213–15, 48 USPQ2d 1010, 1016–18 (Fed. Cir.1998). However, when it is apparent that the element invokes purely functional terms, without the additional recital of specific structure or material for performing that function, the claim element may be a means-plus-function element, despite the lack of express "means" language. *See, e.g., Cole v. Kimberly–Clark Corp.*, 102 F.3d 524, 530, 41 USPQ2d 1001, 1006 (Fed. Cir.1996).

Given the parallel format of the statute, a similar analysis applies to step-plus-function claim elements. Certain phrases trigger a presumption that § 112, ¶ 6 applies, but other aspects of the element, such as the recitation of a specific act, may overcome that presumption. The difficulty of distinguishing acts from functions in step-plus-function claim elements, however, makes identifying step-plus-function claims

inherently more problematic. This difficulty places a significant burden on the claim drafter to choose language with a definite and clear meaning. To invoke a presumption of § 112, ¶ 6 application, a claim drafter must use language that expressly signals the recitation of a function as distinguished from an act.

As used in § 112, ¶ 6, "step" is the generic term for "acts" in the same sense that "means" is the generic term for "structure" and "material." *See O.I. Corp.*, 115 F.3d at 1583. The word "step," however, may introduce either an act or a function depending on context within the claim. Therefore, use of the word "step," by itself, does not invoke a presumption that 112, ¶ 6 applies. For example, method claim elements may begin with the phrase "steps of" without invoking application of § 112, ¶ 6. *See O.I. Corp.*, 115 F.3d at 1583. The phrase "steps of" colloquially signals the introduction of specific acts, rather than functions, and should therefore not presumptively invoke application of § 112, ¶ 6.[4]

Unlike "of," the preposition "for" colloquially signals the recitation of a function. Accordingly, the phrase "step for" generally introduces functional claim language falling under § 112, ¶ 6. *See Greenberg,* 91 F.3d at 1583 ("Claim drafters conventionally use the preface 'means for' (or 'step for') when they intend to invoke [§ 112, ¶ 6]."). Thus, the phrase "step for" in a method claim raises a presumption that § 112, ¶ 6 applies. This presumption gives legal effect to the commonly understood meanings of "of" – introducing specific materials, structure or acts – and "for" – introducing a function.

Even when a claim element uses language that generally falls under the step-plus-function format, however, § 112, ¶ 6 still does not apply when the claim limitation itself recites sufficient acts for performing the specified function. As this court explained in *O.I. Corp.:*

Of course, [§ 112, ¶ 6] is implicated only when means *plus function* without definite structure are present, and that is similarly true with respect to steps, that the paragraph is implicated only when steps *plus function* without acts are present. The statute thus in effect provides that an element in a combination method or process claim may be recited as a step for performing a specified function without the recital of acts in support of the function.

*O.I. Corp.*, 115 F.3d at 1583. Therefore, when the claim language includes sufficient acts for performing the recited function, § 112, ¶ 6 does not apply.

Again similar to a means-plus-function analysis, the absence of the phrase "step for" from the language of a claim tends to show that the claim element is not in step-plus-function form. However, claim elements without express step-plus-function language may nevertheless fall within § 112, ¶ 6 if they merely claim the underlying function without recitation of acts for performing that function. Unfortunately, method claim elements often recite phrases susceptible to interpretation as either a function or as an act for performing a function. Both acts and functions are often stated using verbs ending in "ing." For instance, if the method claim element at issue in this case had merely recited the "step of" "spreading an adhesive tack coating," it would not have been clear solely from this hypothetical claim language whether "spreading" was a function or an act. In such circumstances, claim interpretation requires careful analysis of the limitation in the context of the overall claim and the specification.

In general terms, the "underlying function" of a method claim element corresponds to *what* that element ultimately accomplishes in relationship to what the other elements of the claim and the claim as a whole accomplish. "Acts," on the

---

4. Similarly, using "of" in an apparatus claim would probably be understood to introduce structure or materials rather than a function (i.e., "by means *of* a stick").

other hand, correspond to *how* the function is accomplished. Therefore, claim interpretation focuses on what the claim limitation accomplishes, i.e., it's underlying function, in relation to what is accomplished by the other limitations and the claim as a whole. If a claim element recites only an underlying function without acts for performing it, then § 112, ¶ 6 applies even without express step-plus-function language.

In sum, similar to means-plus-function claims, this court employs a straightforward analysis for identifying a step-plus-function claim. If the claim element uses the phrase "step for," then § 112, ¶ 6 is presumed to apply. Because the phrasing "step for" would appear to claim every possible act for performing the recited function, in keeping with § 112, ¶ 6, such a claim covers only the specific acts recited in the specification for performing that function, and equivalent acts. On the other hand, the term "step" alone and the phrase "steps of" tend to show that § 112, ¶ 6 does not govern that limitation. Accordingly, this court has similarly denied step-plus-function treatment to method claims which use the conventional "steps of" language.[5] *See e.g., O.I. Corp.*, 115 F.3d at 1582–83; *Serrano v. Telular Corp.*, 111 F.3d 1578, 1583, 42 USPQ2d 1538, 1542 (Fed.Cir.1997).

In the present case, claim 1 of the '622 patent uses the phrase "steps of" in the preamble to introduce several "steps." The specific element at issue recites the step of "spreading an adhesive tack coating for adhering the mat to the foundation over the foundation surface." Because the phrase "step for" is lacking in both the preamble and the disputed claim element, this language tends to show that the verb "spreading" recites an act rather than a function. However, if an examination of the claim element reveals that it recites only the underlying function, § 112, ¶ 6 nonetheless applies. Therefore, this court next looks to whether the claim element recites only the underlying function of the element itself as opposed to an act for performing it.

Although claim 1 recites several "steps" "for constructing an activity mat over a foundation," the recitation of the overall function of the claim in the preamble does not suffice to convert each element into an act for performing that function so as to preclude application of § 112, ¶ 6. Rather, according to the statute, each element must be examined individually to determine whether it merely recites that element's function or a specific act for performing it. *See* 35 U.S.C. § 112, ¶ 6 ("An *element* ... may be expressed as a ... step for performing a specified function without the recital of ... acts." (emphasis added)). If the language of the claim element does not expressly state its function, the function of that element may nonetheless be discernible from the context of the overall claim and the disclosure in the specification. In *O.I. Corp.*, for example, the functions of the elements at issue were not explicitly recited. Both of the elements in the *O.I. Corp.* claim recited "passing the analyte slug through [a temperature controlled] passage." This court's review disclosed that each of these elements recited an act. *See id.* at 1583. Therefore, this court appropriately declined to apply § 112, ¶ 6.

Unlike the claim elements in *O.I. Corp.*, the function of the element at issue in this case, namely, "adhering the mat to the foundation," appears explicitly in the claim language. The preposition "for" introduces this underlying function and links the "adhering" function to the act of "spreading." In other words, the function of "adhering" is the result achieved by

---

5. Only a few cases have found the existence of a step-plus-function claim element. *See, e.g., In re Roberts*, 470 F.2d 1399, 176 USPQ 313 (CCPA 1973) (finding § 112, ¶ 6 (then ¶ 3) applicable to claim element which recited "reducing the coefficient of friction to below about 0.40."); *Ex Parte Zimmerly*, 153 USPQ 367 (BPA 1966) (finding § 112, ¶ 6 (then ¶ 3) applicable to claim element which recited "raising the pH.").

performing the claimed act of "spreading." The claim discloses "spreading" as an act by using the introductory terms "steps of." The contested element in this case is therefore not in classical step-plus-function form. Moreover, this element recites more than a function, namely the claimed act of "spreading." Accordingly, because this claim limitation is not in explicit step-plus-function form and specifies an act associated with the underlying function, the claim drafter did not invoke § 112, ¶ 6.

If, instead of this language, this limitation had claimed "a step for adhering the mat to the foundation," without the additional recitation of an act or acts for "adhering," then § 112, ¶ 6 would have governed its interpretation. Likewise, if this claim limitation had specified only the underlying function, namely, "adhering the mat to the foundation," without recital of specific acts for "adhering," 112, ¶ 6 would have governed, despite the lack of "step for" language. Here, however, because the claim drafter did not use the phrase "step for" and claimed acts for performing the underlying function, I perceive that the district court erred by construing this limitation as a step-plus-function element.

For reasons similar to why this disputed claim element does not register as a step-plus-function element, it also does not register as a means-plus-function element. In the first place, the claim language does not use the traditional term "means." *See Mas–Hamilton*, 156 F.3d at 1213. Furthermore, the term "adhesive tack coating" in the disputed element of claim 1 is a sufficient disclosure of material for performing the claimed function to preclude application of § 112, ¶ 6. For these reasons, § 112, ¶ 6 does not govern interpretation of this claim element.

Although the district court incorrectly applied § 112, ¶ 6, I reach the same result as the court because this error was harmless. Without the limiting strictures of § 112, ¶ 6, the claim term "adhesive tack coating" would theoretically enjoy a broad-er application. Indeed, applying § 112, ¶ 6, the district court limited the term to the "suitable tack coating materials" disclosed in the specification and those which "result[ ] from an insubstantial change which adds nothing of significance to the materials disclosed." Based on this instruction, the jury determined that latex qualified as an equivalent structure to those disclosed in the specification of the '622 patent. This determination demonstrates that the jury found latex to be an "adhesive tack coating" as required by the claim. Under a correct claim construction, therefore, the jury would also have found literal infringement. Nevertheless, because the claim element at issue is neither in means nor in step-plus-function form so as to invoke application of the statute, I concur in the result.

BRYSON, Circuit Judge, with whom Circuit Judge PAULINE NEWMAN joins, concurring.

■ While I concur in the opinion of the court in this case, I write separately to explain why I believe the step-plus-function issue that Judge Rader addresses in his concurring opinion is not properly before this court.

■ Neither party objected at any point to the district court's characterization of the claim at issue in this case as subject to 35 U.S.C. § 112, ¶ 6. Neither party objected to the jury instruction on that issue, and neither party has questioned that instruction on appeal. When a jury instruction is not objected to on a timely basis at trial, the legal issue incorporated in that instruction may not be raised on appeal, absent egregious circumstances. *See* Fed.R.Civ.P. 51; *Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575, 1581 (Fed.Cir.1996). That principle applies with special force when the parties do not raise any claim of instructional error on appeal. *See Pentax Corp. v. Robison*, 135 F.3d 760, 762 (Fed.Cir. 1998).

■ It is true, as Judge Rader states, that claim construction is a question of law. But parties waive legal issues as well as factual questions whenever they fail to preserve them for appeal or to raise them before the appellate court. We have no duty, with respect to claim construction or any other non-jurisdictional legal issue, to address questions the parties have not preserved for appeal and have not presented as grounds for challenging or supporting the judgment of the trial court.

The requirement that appellate courts normally limit themselves to issues that the parties have preserved below and raised on appeal serves important interests of both trial and appellate processes. The trial process benefits from a preservation-of-error requirement because it frees trial courts to focus on the factual and legal issues the parties identify as being in dispute, without having to worry that a misstep on an issue not disputed or objected to by the parties will result in a reversal. The requirement benefits the appellate process by letting appellate courts focus on issues that the trial courts have expressly ruled on and that the parties have briefed on appeal, rather than having to venture opinions regarding issues that have never been briefed, argued, or even adverted to in the course of the proceedings.

In this case, for example, the question whether the claim at issue is a step-plus-function claim is a difficult one, to which Judge Rader has devoted several pages of analysis, some of which breaks new ground. That analysis may be correct, but I would feel more comfortable embracing it if it had been the subject of a decision below and had been tested by briefing and argument before us, rather than emerging for the first time in the course of our disposition of the appeal.

The appellant's position on the main issue in this case is that it does not infringe claim 1 of the '622 patent because latex cannot serve as an "adhesive tack coating for adhering the mat to the foundation over the foundation surface." In order to resolve that issue, we need only decide that the term "adhesive tack coating," as used in the claim, does not exclude latex; we are not required to decide whether the language of claim 1 of the '622 patent invokes section 112, paragraph 6. I therefore concur in the court's opinion, which decides the issue of liability without addressing the question whether the trial court erred in characterizing the claim in this case as a "step-plus-function" claim.